UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


EDDIE PRITCHETT,                                      CASE NO. 05-CV-10206

      Plaintiff,

                                       DISTRICT JUDGE DAVID M. LAWSON
v.                                                   MAGISTRATE JUDGE CHARLES E. BINDER

OFFICE OF THE ATTORNEY GENERAL,

      Defendant.
_____/


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANT'S MOTION TO DISMISS
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**
(Dkt. 14)


**I.      RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's motion be

**GRANTED**.


**II.     REPORT**

**A.      Introduction and Procedural History**

By order of United States District Judge David Lawson, this employment discrimination

case was referred to the undersigned Magistrate Judge for pretrial case management. (Dkt. 7.)  On

March 13, 2006, the Defendant filed a motion to dismiss or in the alternative for summary

judgment in lieu of an answer. (Dkt. 14.) Plaintiff Pritchett responded opposing the motion, (Dkt.

16), and Defendant filed its reply. (Dkt. 17.)  Upon review, I conclude that pursuant to E.D. Mich.

LR 7.1(e)(2), the motion is ready for Report and Recommendation on the pleadings without oral argument.

Plaintiff filed this action, *pro se,* on August 10, 2005. (Dkt. 1.) Plaintiff used the Court's standard complaint form, attaching to it a six-page typewritten statement made out in a single paragraph. This statement and other forms prepared by the Plaintiff indicate that he intended to raise claims of retaliation for workplace harassment, slander, defamation, loss of earnings and pain and suffering.

Shortly after receipt of the Order of Reference, I issued an Order to Show Cause why the case should not be dismissed. (Dkt. 8.) Noting that Plaintiff referred to Equal Employment Opportunity Commission ("EEOC") proceedings, but that no supporting documentation was attached to the complaint, Plaintiff was given until November 1, 2005, to provide the documentation. Plaintiff timely filed a response (Dkt. 9), attaching to it a "Final Agency Decision" issued May 16, 2005, by the Director, Office of Employment Discrimination Complaint Adjudication, Department of Veterans' Affairs. (*Id.*) The Decision found no discrimination against the Plaintiff on the basis or sex, and found that no retaliation had been taken against the Plaintiff. (*Id.*) Plaintiff filed a "Second Submission in Response to Order to Show Cause" ten days later (Dkt. 10), comprising seven pages, again typewritten in the form of a single paragraph. Plaintiff then filed a  document entitled "Amended Complaint in Better Detail" on December 20, 2005, (Dkt. 12), comprised of eight pages, again typewritten in the form of a single paragraph. As mentioned, the instant motion followed, three and a half months later.

### B.     Motion Standards

A motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the plaintiff's claims. *Barrett v. Harrington*, 130 F.3d 246, 251 (6th Cir. 1997). The

court must accept as true all factual allegations in the complaint, must resolve any ambiguities in the plaintiff's favor, *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-512 (6th Cir. 2001), and must construe all reasonable inferences in favor of the plaintiff. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). However, the court need not accept as true a plaintiff's legal conclusions or unwarranted factual inferences. *Perry v. American Tobacco Co., Inc.*, 324 F.3d 845, 848 (6th Cir. 2003).

The Sixth Circuit has instructed that, "although we do not require the plaintiffs at the 12(b)(6) stage to present evidence on the elements of their claims, their complaint must nonetheless 'contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Perry v. Southeastern Boll Weevil Eradication Found.*, 154 Fed. Appx. 467, 472 (6th Cir. 2005) (quoting *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)). Generally the court is confined to reviewing solely the complaint to determine whether a plaintiff has stated a claim, and matters outside the pleadings may not be considered. *See, e.g., Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001). However, when a plaintiff attaches exhibits to a complaint that are central to the asserted claims, the exhibits may be taken into account. *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1555 (6th Cir. 1997).

In this case, Plaintiff is not represented by counsel. The Supreme Court has held that the federal courts are required to liberally construe the pleading of a *pro se* plaintiff and to hold it to a less stringent standard than a similar pleading drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999).

### C.      Complaint

Although Plaintiff Pritchett's "Amended Complaint in Better Detail" (Dkt. 12) sets forth many details, it is difficult to even liberally construe as alleging any specific claims.  The first two pages of the  Amended Complaint seem to describe a situation where, because of a scheduling or information mishap, a patient was neglected and was discovered "choking on his vomit."  (Dkt. 12 at 1,  ¶ 2.)  Plaintiff reported this situation to his union steward, Judy Little, in November of 2002 and alleges that he was retaliated against because of his report.  (*Id.* at 2, ¶ 1-2.)

The alleged retaliation took several forms: (1) threats made to Plaintiff by Marlene Johnson who told him that "if [he] report[ed] something like that again that she would make sure [he] got disciplined for it" (*id.* at 2, ¶ 1) (November of 2002); (2) disapproval of sick leave and threats that if Plaintiff returned to work "they wouldn't write [him] up for sick leave abuse"(*id.* at 2, ¶ 2) (December 30, 2002); and (3) after Plaintiff returned to work that same day as the second allegation of retaliation and was given inconsistent demands from the nurse manager Julia Roberts to "get off her floor that [he] couldn't be up there sick like that"but also that "if [he] didn't get up and leave that she was going to write [him] for insabordination [sic]" and she "grab[bed] the blood pressure cuff that was still attached to [his] arm and jerk[ed him] by [the] arm very hard." (*Id.*) (December 30, 2002).  After the alleged threats made on December 30, 2002, Plaintiff was given the opportunity to be examined by a doctor at the hospital where he works, but he refused because he "want[ed] to see [his] own doctor which is [his] choice, but they [were] trying to write [him] up if [he should] leave." (*Id.*  at 3.)  These allegations will be considered under the "retaliation" heading.

At this point, Plaintiff alleges that Marlene Johnson, nurse manager, stated "you know all you blackmen [sic] have health issues and problems and your [sic] probably on drugs to [sic]." (*Id.*)  This allegation will be discussed under the "racial discrimination"heading.

Plaintiff further contends that after he refused to seek help at the urgent care facility, Marlene Johnson "grabbed [him] by [his] right hand and started squeezing and jerking [him] very hard by [his] right hand" after which he "felt a sharp pain in [his] hand and thumb like something slipped out of place." (*Id.*)  Plaintiff then "started to hit her to [sic] but if [he] did they would have fired [him] not her [] she then let go" at which time Plaintiff was "escorted to urgent care." (*Id.*) Plaintiff contends that this was an assault and battery upon his person. (*Id.*)  Plaintiff also alleges that his thumb was "broken" because although "xrays [sic] showed that [he] had some torn ligaments" (*id.* at 4), later he "had to have a MRI on [his] thumb just to find out that it was broken and the xrays [sic] didn't pick it up." (*Id.*)  These allegations will be considered under the "assault and battery" heading.

Once at urgent care, Plaintiff alleges that Marlene Johnson told the doctor that she wanted Plaintiff tested for drugs and that "if [he] didn't submit to a drug test [he] would get fired." (*Id.* at 3.)  Plaintiff submitted to the test but believes the testing process violated his right of privacy. (*Id.*)  Plaintiff further alleges that Marlene Johnson requested his medical records "without his consent" in violation of the "HIPPA [sic] [Health Portability & Accountability Act of 1996] privacy law." (*Id.* at 5.)[1]   Plaintiff also contends that Tom Sabgash[2] harassed him when Mr. Sabgash told Plaintiff he had found Plaintiff's personal property but was really accusing Plaintiff of possessing and reading pornography.  (*Id.* at 7.)   Plaintiff contends this situation was

---

[1]This appears to be a new allegation that was not brought before the EEOC.

[2]The complaint neglects to indicate Mr. Sabgash's office, role or authority.

exacerbated because the graphic details were described in front of a Delta College student.  (*Id.*)
³  These allegations will  be discussed under the "privacy" heading.

Plaintiff also contends that he was assigned to the file room even though he had not
requested to be "reassigned from [his] ward because of the assault and battery" but he had
requested to be "placed in a position equal to [his] own which [he] wasn't."  (*Id.* at 5.)  Viewing
the complaint in the most favorable light to the Plaintiff, this unattractive reassignment could be
considered an alleged consequence or damage that he suffered because of the alleged violations
above that will be discussed under the "retaliation" heading below.

Finally, Plaintiff contends that his personal property was removed from his locker which
amounted to "malicious intent and destruction of [his] personal property."  (*Id.* at 6.)   This
allegation will be discussed under the "personal property" heading.

Plaintiff contends that the above allegations give rise to the following claims: "assault and
battery by two managers, intentional infliction of pain, intentional infliction of mental anguish and
emotional distress, violation of my constitutional rights to privacy, violation of my civil rights,
retaliation and reprisal, disparate treatment, malicious intent and destruction of property,
intimidation and coercion, defamation of character painting me in a false light, pain and suffering,
harassment and humiliation, verbal threats, failing to provide a safe working environment, racial
harassment and discrimination and abuse of authority, negligent supervision, negligent retention,
as you can see you name it, it has happened to me." (*Id.* at 7-8.)

---

³Although the EEOC considered a sexual harassment allegation based on the above, Plaintiff raises the
presence of a Delta College student, and privacy concerns, for the first time.  Plaintiff does not allege "sexual"
harassment in his lengthy list of claims.  Even if Plaintiff had raised sexual harassment, I suggest he has not alleged
facts that would be sufficiently severe or pervasive to state a claim of sexual harassment. *Randolph v. Ohio Dep't
of Youth Servs.*, 453 F.3d 724, 734 (6th Cir. 2006).

Plaintiff filed a complaint with the EEOC on April 21, 2003, and the agency issued its decision denying relief on May 16, 2005.  (Dkt. 10.)

### D.      Service and Filing Requirements

Plaintiff received notice of the final agency decision by the EEOC on May 16, 2005, and the decision itself notifies Plaintiff of his right to appeal within 30 days or, if no appeal is taken,  to file a civil action within 90 days.  ( Dkt. 10 at 16-17.)  The final agency decision was captioned "Eddie Pritchett, Complainant v. Secretary, Department of Veteran Affairs."  (*Id.*)  The final agency decision also specifically notified Plaintiff that he:

> **must** name the person who is the official head of the Department of Veteran Affairs as the defendant...The complainant must name R. James Nicholson as the defendant. The complainant must also state the official title of the Department head.  The official title of the head of the Department of Veteran Affairs is **Secretary of Veterans Affairs**.  Failure to provide the name or official title of the head of the Department may result in dismissal of the case.

(*Id.*) (emphasis in original).  Yet, when Plaintiff filed this civil action on August 10, 2005, his complaint named "Office of the Attorney General, Dept. of Justice, John Ashcroft."  (Dkt. 1.) However,  Plaintiff's Application for Appointment of Counsel Financial Affidavit, filed August 10, 2005, listed "Secretary, Veteran Affairs, U.S. Dept. Of Veterans Affairs" as the Defendant. (Dkt. 3.)

Plaintiff's "Amended Complaint in Better Detail," filed December 20, 2005, did not contain a caption. (Dkt. 12.)  Court staff provided summons and return of service forms which named the Secretary of Veteran Affairs as the Defendant and indicated that the Secretary, R. James Nicholson, the Office of the Assistant U.S. Attorney and the Department of Justice would be served.  Staff then gave the forms to the U.S. Marshal's Service for service to be made on December 29, 2005.  (Dkt. entry dated 12/29/05.)  Plaintiff has never named R. James Nicholson

as a party defendant.  Accordingly, Plaintiff has yet to have properly named or served all of the necessary parties.

42 U.S.C. § 2000 e-16(c), states that "within 90 days of receipt of notice of final agency action...or after one hundred and eight days from the filing of the initial charge with the department, agency . . . an employee . . . may file a civil action as provided in section 2000e-5 of this title."  Defendant seeks dismissal of the complaint under these provisions, and  based on Plaintiff's failure to properly name the Secretary of Veterans Affairs as the proper defendant and to file this action within the 90-day time limitation placed by 42 U.S.C. § 2000e-16(c).  Defendant relies on *Rys v. U.S. Postal Serv.*, 886 F.2d 443 (6th Cir. 1989), which held that, absent equitable exceptions, the failure to name the proper defendant within the statutory time limitation  requires dismissal of the complaint, even where the plaintiff is *pro se*.

In *Rys*, it was undisputed that plaintiff failed to provide notice to the proper defendant, the Postmaster General, within the statutory time period.  *Id.* at 445.  Consequently, the issue before the Sixth Circuit was whether any equitable doctrines, such as tolling or waiver, would prevent plaintiff's claim from being time barred.  *Id.*   The equitable tolling argument was based on an alleged ambiguity in the final agency decision notice which indicated that the complainant needed to "name the appropriate official agency or department head as the defendant."  *Id.* at 446. Plaintiff had named the U.S. Postal Service and individual division managers or postmasters but not the Postmaster General. *Id.* at 444.  Rys served the complaint on the individuals and the U.S. Attorney's Office and the United States Attorney General.  *Id.*  The Court concluded that the notice was not so misleading and that Plaintiff was not misled by the "agency or department head" language because he named the USPS and several local department heads, and had he been misled, he would have named only the USPS. *Id.* at 447.

8

In the instant case, Plaintiff was given a completely unambiguous notice that provided him with and imperatively told him he "must" name the official head of the Department of Veteran Affairs, and that, in his case, R. James Nicholson was the proper defendant. (Dkt. 10 at 16-17.) Plaintiff was also expressly notified that he needed to state the official title of the Department head and that, in his case, the title was Secretary of Veterans Affairs. (*Id.*) Finally, he was warned that his failure to do so could result in his case being dismissed. (*Id.*) It is hard to imagine a more clear set of instructions; as a result, I suggest that Plaintiff Pritchett cannot successfully assert any argument sounding in equity to avoid the general statutory preclusion.

Although not specifically raised by Plaintiff, Defendant discusses whether further amendments to Plaintiff's complaint should be allowed. On this issue, I further suggest that amendment would not be an appropriate remedy under these facts. *Soto v. U.S. Postal Serv.*, 905 F.2d 537, 540-41 (1st Cir. 1990) (applying *Rys, supra*, and Rule 15(c) and noting that the party to be added must receive formal notice of the claim before the statute of limitations runs unless an equitable exception would allow deviation from the rule which was not present on the facts).

Finally, as noted by Defendant, even if amendment were permitted, that amended pleading would relate back to the date the original complaint was filed, and service of process was not timely made. Here, service was effectuated sometime after the summonses were issued by the court on December 29, 2005.[4] Even assuming service was perfected on December 29, 2005, that date is 141 days after the complaint was filed which falls outside the 120-day rule set forth in Rule 4(m) of the Federal Rules of Civil Procedure.

I therefore suggest that the Defendant's motion be granted and the complaint be dismissed for failure to comply with 42 U.S.C. § 2000e-16(c) or, alternatively, FED. R. CIV. P. 4(m).

---

[4]Defendant states that service was effectuated on January 10, 2006.

### E.       Plaintiff's Claims

Although the recommendations above are dispositive of the pending motion, in the interest of completeness and judicial economy on review, Plaintiff's claims, as best the Court is able to understand them, will also be considered.

### 1.       Racial Discrimination

Plaintiff states that after the alleged retaliation occurred and Plaintiff's arm had been pulled, Marlene Johnson, nurse manager, stated "you know all you blackmen [sic] have health issues and problems and your [sic] probably on drugs to [sic]."  (Dkt. 12 at 3.)

Title VII prohibits employers from discharging, or otherwise discriminating against, an individual with respect to compensation, terms, conditions, or privileges of employment because of race, color, religion, sex, or national origin.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002); *Phillips v. Cohen*, 400 F.3d 388, 397 (6th Cir. 2005).

The elements of a *prima facie* case of discrimination under Title VII are: (1) plaintiff is a member of a protected class, (2) he was subject to an adverse employment action, (3) he was qualified for the position at issue, and (4) he was replaced by someone outside the protected class. *Smith v. City of Salem, Ohio*, 378 F.3d 566, 470 (6th Cir. 2004); *Noble v. Brinker Intern., Inc.*, 391 F.3d 715, 728 (6th Cir. 2004).  Although a plaintiff is not required to "present evidence" on each of these elements in his complaint, the complaint must nonetheless 'contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'"  *Perry*, 154 Fed. Appx. at 472.  The alleged adverse action taken against Plaintiff was disapproval of sick leave and an undesirable reassignment.  (Dkt. 12 at 2, ¶ 2 & 5.)

10

Nowhere in Plaintiff's complaint does he state that assignments in general are unfairly made based on race.   The salient issue in a Title VII claim of discrimination is whether the plaintiff was singled out because of his membership in a protected class and treated less favorably than those outside the class, not whether the plaintiff was treated less favorably than "someone's general standard of equitable treatment."  *Batts v. NLT Corp*., 844 F.2d 331, 337 (6th Cir. 1988) (citations omitted).  Since Plaintiff has not shown or even alleged that a difference in treatment occurred based on his membership in the protected class , i.e., black persons, I suggest that Plaintiff has failed to plead sufficient facts to withstand a motion to dismiss.[5]

## 2.    Retaliation

The first two pages of the  Amended Complaint seem to describe a situation where, because of a scheduling or information mishap, a patient was neglected and was discovered "choking on his vomit."  (Dkt 12 at 1,  ¶ 2.)  Plaintiff reported this situation to his union steward, Judy Little, in November of 2002 and alleges that he was retaliated against because of his report.  (*Id.* at 2, ¶¶ 1-2.)   The alleged retaliation took several forms: (1) threats made to Plaintiff by Marlene Johnson who told him that "if [he] report[ed] something like that again that she would make sure [he] got

---

[5]To the extent that Plaintiff's complaint can be construed to assert a claim of hostile work environment, the complaint is also legally deficient.  Under Title VII, a *prima facie* case of hostile work environment consists of five elements. *See Bourini v. Bridgestone/Firestone North Am. Tire, LLC*, 136 Fed. Appx. 747, 750 (6th Cir. 2005) (citing *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999)).  First, a plaintiff must be a member of a protected class, and here Plaintiff is a black man so this element is satisfied.   The second and third elements are that unwelcomed harassment occurred and that it was based upon the plaintiff's membership in a protected class.  In this case, Plaintiff has not plead sufficient allegations that his treatment was based on membership in a class rather than a personality conflict with his supervisors.  The fourth requirement is that the harassment had the effect of unreasonably interfering with the plaintiff's work performance by creating an intimidating, hostile, or offensive work environment.  In this case, construing the allegations most favorably to the Plaintiff, it is arguable that the environment alleged was somewhat hostile.  The final element is that the employer is liable for the harassment.  For the employer to be held liable, however, the plaintiff must show "that the employer knew or should have known of the conduct, and that its response manifested indifference or unreasonableness." *Jackson v. Quanex*, 191 F.3d 647, 663 (6th Cir. 1999).  Here, Plaintiff has not alleged that he made any attempt to inform the employer of the allegations contained in this complaint.  Therefore, these elements cannot be met on the complaint, and to the extent the complaint alleges hostile work environment, I suggest it should also be dismissed.

disciplined for it"; (*id.* at 2, ¶ 1) (November of 2002); ( 2) disapproval of sick leave and threats that

if Plaintiff returned to work "they wouldn't write [him] up for sick leave abuse"; (*id.* at 2, ¶ 2)

(December 30, 2002); and (3) after Plaintiff returned to work that same day as the second

allegation of retaliation and was given inconsistent demands from the nurse manager Julia Roberts

to "get off her floor that [he] couldn't be up there sick like that"but also that "if [he] didn't get up

and leave that she was going to write [him] for insabordination [sic]" and she "grab[bed] the blood

pressure cuff that was still attached to [his] arm and jerk[ed him] by [the] arm very hard." (*Id.*)

(December 30, 2002).  After the alleged threats made on December 30, 2002, Plaintiff was given

the opportunity to be examined by a doctor at the hospital where he worked, but he refused because

he "want[ed] to see [his] own doctor which is [his] choice, but they [were] trying to write [him]

up if [he should] leave." (*Id.* at 3.)

One of the key elements of a *prima facie* case of retaliation is that there was a causal

connection between activity protected under Title VII and the adverse employment action. *See*

*Morris v. Oldham County Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000).  Here, Plaintiff is

precluded from arguing that the adverse employment action was in retaliation for filing a charge

with the EEOC, because he was unsatisfactorily reassigned and denied sick leave in 2002, and his

EEOC charge was not filed until April of 2003. *Id.*  Consequently, I suggest that any retaliation

claim should be dismissed on this ground alone.

Defendant argues that this claim should be dismissed for failure to exhaust administrative

remedies.  Defendant notes that although the specific, discrete allegations were considered by the

agency, they are now recast as being part of a pattern of retaliation that was not argued before the

agency.  (Dkt. 14 at 18-19.)  Defendant cites *Nat'l R.R. Passenger Corp., supra*.

*Morgan* involved a Plaintiff who filed, with the EEOC, a charge of discrimination and retaliation against his employer in February of 1995, contending that he was harassed and disciplined more harshly than other workers because of his race. *Id.* at 106. In July of 1996, the EEOC issued a "Notice of Right to Sue." *Id.* Morgan filed his lawsuit in October of 1996, and the issue was whether defendant could be held liable for alleged incidents of discrimination occurring more than 300 days[6] before Morgan filed the charge with the EEOC in 1995. The Court held that an employer can only be held liable for discrete discriminatory or retaliatory acts occurring within the 300 day limit but that an employer may be held responsible for a hostile work environment if all acts constituting the claim are part of the same unlawful practice and at least one act falls within the filing period. *Id.* at 123.

In the instant case, the alleged retaliation was not prompted by Plaintiff's reporting of unlawful discrimination but rather, was alleged to have been prompted by Plaintiff's reporting of patient neglect. (Dkt. 12 at 1, ¶ 2.) Since the alleged retaliation was not even averred to have occurred because of Plaintiff's race, I suggest that any retaliation does not fall within the scope of Title VII.[7] This conclusion is supported by the fact that the incidents comprising the alleged retaliation occurred before the Plaintiff filed his complaint with the EEOC.[8] Accordingly, I further suggest that the complaint should be dismissed on this ground as well.

Even assuming that Plaintiff's complaint alleges retaliation based on his race, Plaintiff has not shown that the alleged incidents are part of the same unlawful practice. *Morgan,* 536 U.S. at

---

[6]The 300-day time limit is found in 42 U.S.C. § 2000e-5(e).

[7]It is noted that Plaintiff's complaint does not allege violation of any whistleblower provisions of any federal statute.

[8]Plaintiff filed his complaint with the EEOC on April 21, 2003, and all the alleged incidents of retaliation occurred in 2002.

123; *Sharpe v. Cureton*, 319 F.2d 259, 268 (6th Cir. 2003)(mere discriminatory treatment is insufficient, plaintiffs must show that the employer's discrimination against the whole class, e.g., race, was "standard operating procedure.")[9] I suggest this provides further support for dismissal of Plaintiff's complaint.

### 3.   Assault and Battery

Plaintiff further contends that after he refused to seek help at the urgent care facility, Marlene Johnson "grabbed [him] by [his] right hand and started squeezing and jerking [him] very hard by [his] right hand" after which he "felt a sharp pain in [his] hand and thumb like something slipped out of place." (Dkt. 12 at 3.)  Plaintiff then "started to hit her to [sic] but if [he] did they would have fired [him] not her [] she then let go" at which time Plaintiff was "escorted to urgent care." (*Id.* at 3.)  Plaintiff contends that this was an assault and battery upon his person. (*Id.*)  Plaintiff also alleges that his thumb was "broken" because although "xrays [sic] showed that [he] had some torn ligaments" (*Id.* at 4.), later he "had to have a MRI on [his] thumb just to find out that it was broken and the xrays [sic] didn't pick it up." (*Id.* at 4.)

Jurisdiction over this claim arises under 28 U.S.C. § 1367 which establishes supplemental jurisdiction.   If the Court dismisses Plaintiff's claims arising under this Court's original jurisdiction, supplemental jurisdiction is no longer available.  Consequently, I suggest this claim should be dismissed along with the claims arising under federal law.

---

[9]Nor does the complaint reveal any circumstances that would give rise to application of equitable tolling principles. *See Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.,* 209 F.3d 552, 560-61 (6th Cir. 2000) ("Typically, equitable tolling applies only when a litigant's failure to meet a legally mandated deadline unavoidably arose from circumstances beyond that litigant's control.")

### 4.      Privacy

Once at urgent care, Plaintiff alleges that Marlene Johnson told the doctor that she wanted

Plaintiff tested for drugs and that "if [he] didn't submit to a drug test [he] would get fired."  (Dkt.

12 at 3.)  Plaintiff submitted to the test but believes the testing process violated his right of privacy.

(*Id.*)  Plaintiff further alleges that Marlene Johnson requested his medical records "without his

consent" in violation of the "HIPPA [sic] privacy law."  (*Id.* at 5.)[10]

I suggest that the alleged violation of privacy based on the governmental employer's

requirement that Plaintiff submit to drug testing should be dismissed as lacking merit.[11]  Drug

testing of employees in highly regulated fields, such as the medical profession, is lawful so long

as the testing procedure is reasonable and not unduly intrusive.  *International Union v. Winters,*

385 F. 3d 1003, 1012-13 (6th Cir. 2004) (finding that employees in these fields have a diminished

expectation of privacy and noting that previous case law has held that presence of specimen

collector was not unreasonable).

I further suggest that this alleged HIPAA violation should also be dismissed.  Research

reveals that every court to have considered the question has held that HIPAA does not provide a

private cause of action.  *Silva v. Porter*, No. 04-CV-2542-T-17EAJ,  2006 WL 1890194 (M.D.

Fla., July 10, 2006); *Walker v. Gerald*, No. 05-6649, 2006 WL 1997635 (E.D. La. June 27, 2006);

*Doe v. Bd. of Trustees of Univ. of Illinois*, 429 F. Supp. 2d 930 (N.D. Ill. 2006); *Bradford v. Blake*,

No. 4:05-CV-136 CAS, 2006 WL 744307 (E.D. Mo. March 23, 2006); *Poli v. Mountain Valleys*

*Health Centers, Inc.*, No. 2:05-2015-GEB-KJM, 2006 WL 83378 (E.D. Cal. Jan. 11, 2006); *Slue*

---

[10]This appears to be a new allegation that was not brought before the EEOC.

[11]If the employer were a private employer, the result would not be altered.  *Baggs v. Eagle-Picher Indus., Inc.,* 957 F.2d 268, 275 (6th Cir. 1992) (holding that a "Michigan employer may use intrusive and even objectionable means to obtain employment-related information about an employee . . . [including] whether employees were reporting to work with drugs in their systems.")

*v. New York Univ. Medical Ctr.*, 409 F. Supp. 2d 349 (S.D.N.Y 2006); *Cassidy v. Nicolo*, No. 03-CV-6603-CJS, 2005 WL 3334523 (W.D.N.Y. Dec. 7, 2005); *Bradford v. Semar*, No. 4:04 CV 1711 CDP, 2005 WL 1806344 (E.D. Mo. July 28, 2005); *Gaul v. Hughes Pharmacy Servs., Inc.*, No. C04-2088-LRR, 2005 WL 1491216 (N.D. Iowa June 23, 2005); *Rigaud v. Garofalo*, No. Civ. A.04-1866, 2005 WL 1030196 (E.D. Pa. May 2, 2005); *Valentin Munoz v. Island Finance Corp.*, 364 F. Supp. 2d 131 (D. Puerto Rico 2005); *Bigelow v. Sherlock*, No. Civ. A. 04-2785, 2005 WL 283359 (E.D. La. Feb. 4, 2005); *Johnson v. Parker Hughes Clinics*, No. Civ. 04-4130 PAM/RLE, 2005 WL 102968 (D. Minn. Jan. 13, 2005); *Univ. of Colorado Hosp. v. Denver Pub. Co.*, 340 F. Supp. 2d 1142 (D. Colo. Aug. 2, 2004); *Logan v. Dep't. of Veteran Affairs*, 357 F. Supp. 2d 149 (D.D.C. July 28, 2004); *Northwestern Mem'l Hosp. v. Village of South Chicago Heights Health & Welfare Fund*, No. 03 C 4006, 2004 WL 168 7057 (N.D. Ill. July 27, 2004); *O'Donnell v. Blue Cross and Blue Shield of Wyoming*, 173 F. Supp. 2d 1176 (D. Wyo. 2001).

### 5.    Personal Property

Finally, Plaintiff contends that his personal property was removed from his locker which amounted to "malicious intent and destruction of [his] personal property." (Dkt. 12 at 6.) Since jurisdiction over any personal property claim also depends on the existence of a claim supporting original jurisdiction,[12] I suggest that this claim also be dismissed.

### F.    Request for More Definite Statement

In their brief in support of the motion to dismiss, Defendants have made an alternative request for a more definite statement under FED. R. CIV. P. 8(a). (Dkt. 14 at 20.) For the reasons set forth above, I suggest that this motion be denied since, in light of the three attempts so far made

---

[12]28 U.S.C. § 1367.

by Plaintiff, there is little likelihood that further exposition of Plaintiff's grievances would provide any additional clarity.

### G.    Renewed Request for Appointment of Counsel

In Plaintiff's Response to the Government's Motion to Dismiss, Plaintiff appears to be renewing his request for counsel which was denied on January 10, 2006.  (Dkt. 13.)  To the extent that this request is reiterated, I suggest it should also be denied for the same reasons as stated in the order of January 10, 2006.  (Dkt. 13.)


## III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.



   s/ Charles E Binder

   CHARLES E. BINDER

Dated: September 13, 2006          United States Magistrate Judge

## <u>CERTIFICATION</u>

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on James A. Brunson, and served in the traditional manner on Eddie Pritchett and Honorable David M. Lawson.


Dated:  September 13, 2006                          By       s/Mary E. Dobbick
                                                                                   Secretary to Magistrate Judge Binder